UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LIZA ACQUAH, GUARDIAN AD LITEM
FOR J.B., A MINOR,

                            Plaintiff,

    -against-                                        5:18-CV-1378 (LEK/DEP)

CITY OF SYRACUSE, *et al.*,

                            Defendants.

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

In February 2017, Defendant Police Officer Vallon Smith arrived at Nottingham High School in Syracuse, New York in response to a call from Vice Principal Kenneth Baxter, who requested that Officer Smith remove Plaintiff J.B. from the school for trespassing. Dkt. No. 1 ("Complaint") ¶¶ 15–16. A struggle ensued between Plaintiff and Officer Smith as Smith attempted to arrest Plaintiff. Id. ¶¶ 19–23. Defendant Police Officer Sheldon Lloyd arrived during the struggle and assisted Officer Smith in arresting Plaintiff. Id. ¶ 26. As a result of the struggle, Plaintiff suffered a concussion and a broken arm. Id. ¶ 47.

Plaintiff's Complaint for damages contains both federal and state claims against the City of Syracuse, the Syracuse Police Department, Chief of Police Frank Fowler, and Officers Smith and Lloyd. Compl. at 1. Under 42 U.S.C. § 1983, Plaintiff alleges the use of excessive force, false arrest, false imprisonment, and assault and battery against Officers Smith and Lloyd, and a Monell claim against the City of Syracuse and Chief Fowler. Compl. at 1; see Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694–95 (1978) (holding that municipalities may be

liable under § 1983 only when an official policy or custom causes the constitutional violation). Plaintiff alleges the state claims of false imprisonment, assault, and battery against Officers Smith and Lloyd; and negligent training, hiring, retention, and supervision, as well as respondeat superior liability against the City of Syracuse. Compl. at 1; see <u>Monell</u>, 436 U.S. at 658.

Now before the Court is Defendants' motion to dismiss. Dkt. No. 6 ("Motion to Dismiss"). Defendants move to dismiss the state claims as untimely, the § 1983 assault and battery claims as redundant of the excessive force claim, the § 1983 false imprisonment and false arrest claims on the grounds that the arrest was privileged, and the <u>Monell</u> claims for failure to state a claim. Dkt. No. 6-4 ("Defendants' Memorandum") at 3–13. Defendants also move to bifurcate the <u>Monell</u> claims from the claims against the police officers. Defs.' Mem. at 17–20. Finally, Defendants request that this Court either direct Plaintiff to replead certain parts of the Complaint or strike portions of the Complaint under Fed. R. Civ. P. 12(e) and (f) because the Complaint allegedly contains impertinent, immaterial, and scandalous matter. <u>Id.</u> at 20–26. For the following reasons, the state claims, the § 1983 assault and battery claims, and the § 1983 false imprisonment and false arrest claims are dismissed. The motion to dismiss the <u>Monell</u> claims is denied. As Defendants did not move to dismiss the excessive force claims, it also survives. Additionally, the motion to bifurcate the <u>Monell</u> claims and the request to order Plaintiff to replead or strike parts of the Complaint are denied.

## II. BACKGROUND

The Court draws all facts, which are assumed to be true, from the Complaint and any documents attached to the Complaint. See <u>Amidax Trading Grp. v. S.W.I.F.T. SCRL</u>, 671 F.3d 140, 145 (2d Cir. 2011). Plaintiff J.B. is a 14-year-old freshman at Nottingham High School who

2

has special needs. Compl. ¶ 52. The high school is located in Syracuse, New York. Id. On Thursday, February 9, 2017, Officer Smith of the Syracuse Police Department responded to a call from Vice Principal Baxter to come remove Plaintiff from the school. Id. ¶ 15. Vice Principal Baxter had already suspended Plaintiff from the school and ordered him to leave the premises. Id. When Officer Smith arrived, Plaintiff had reentered the school to keep warm while waiting for a bus to pick him up because it was 15 degrees outside with 17 MPH winds, creating a negative wind-chill factor. Id. Vice Principal Baxter told Officer Smith that "he instructed [Plaintiff] to leave the school and [Plaintiff] had refused to leave." Id. ¶ 16. Baxter told Smith that "he want[ed] [Plaintiff] arrested for trespassing." Id. Regarding the events that follow this point in time, there is a dispute between Officer Smith's police report and the facts stated in the Complaint, which are supported by video evidence. Id. ¶¶ 28–47. The facts stated in the Complaint are as follows.

Officer Smith approached Plaintiff and began to escort him out of the building. Id. ¶ 17. As the pair proceeded toward the entrance of the building, Officer Smith suddenly lunged at Plaintiff, who had his hands in his pockets at this time. Id. ¶¶ 18–19. Officer Smith slammed Plaintiff against the wall, squeezing the back of his neck. Id. ¶¶ 19–20. Plaintiff then removed his hands from his pockets to attempt to free himself from Smith's grip. Id. ¶¶ 20–22. Officer Smith reacted by slamming Plaintiff against the wall again, punching Plaintiff in the head and face, and attempting to wrestle him to the floor. Id. ¶ 23. Four large, male members of the school staff eventually approached the scene to try to pull Officer Smith away from Plaintiff, but they ultimately failed. Id. ¶ 24. Officer Lloyd arrived at the scene as back-up just after the four staff members attempted to intervene. Id. ¶ 26. Together, Smith and Lloyd lifted Plaintiff into the air

and slammed his body to the ground, breaking his left arm and causing him to suffer a concussion. Id. At this point, the Officers arrested Plaintiff. Id.

Liza Acquah, Guardian Ad Litem for Plaintiff, filed a notice of claim against the City of Syracuse on April 10, 2017. Dkt. No. 6-2 ("First Notice of Claim"). The notice of claim alleged that her son, Plaintiff, had been arrested at school and came home with an injured arm. Id. The video footage of the incident at the school was not released until March 29, 2018. Compl. ¶ 8. Plaintiff's Guardian Ad Litem filed a second notice of claim five days after the video was released, on April 3, 2018. Id. She filed the Complaint on November 28, 2018. Dkt. No. 1.

## III. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint need not contain "detailed factual allegations," but must contain more than legal conclusions "devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). A claim is facially plausible when the plaintiff has pleaded facts that allow the court to reasonably infer that the defendant is liable. Id. The plausibility standard demands "more than a sheer possibility that defendant has acted unlawfully." Id. However, if those facts raise "the reasonable expectation that discovery will reveal evidence of the [misconduct]," the complaint states a claim. Twombly, 550 U.S. at 556. The Court must take the facts as true and draw all reasonable inferences in Plaintiff's favor. Amidax Trading Grp., 671 F.3d at 145.

I. **DISCUSSION**

   **A. Syracuse Police Department**

Since a police department "may not sue or be sued" under New York law, the Syracuse Police Department must be dismissed from this case. Jenkins v. Liadka, No. 10-CV-1223, 2012 WL 4052286, at *9 (N.D.N.Y. Sept. 13, 2012). Police departments are "merely administrative arms" of a municipality, so they do not have their own legal identities under which they can sue or be sued. Id. The City of Syracuse is the municipality in this case, so the Monell claims should be directed toward the City of Syracuse, not the Syracuse Police Department. Id. Therefore, the Syracuse Police Department is dismissed from this case.

   **B. Plaintiff's State Law Claims**

In federal court, "state notice-of-claim statutes apply to state-law claims." Hardy v. N.Y.C. Health & Hosp. Corp., 163 F.3d 789, 793 (2d Cir. 1999). In New York, a notice-of-claim against a municipality or any officer appointed by a municipality must be filed within ninety days after the claim accrues. N.Y. Gen. Mun. Law § 50-e(1)(a). The notice must contain the name and address of the claimant, the nature of the claim, the time and place where the claim arose, and the injuries claimed to have been sustained. N.Y. Gen. Mun. Law § 50-e(2).

Plaintiff's Guardian Ad Litem filed a notice-of-claim on April 10, 2017, which is within ninety days after the claim accrued on February 9, 2017. First Notice of Claim. However, this notice did not contain a sufficient description of the nature of the claim as required by the state law. Id. § 50-e(2). It merely stated that Plaintiff had been arrested at school and he came home with a broken arm without alleging any wrongdoing. First Notice of Claim.

After the video footage of the incident was released on March 29, 2018, Plaintiff's Guardian Ad Litem filed a second notice-of-claim on April 3, 2018. Compl. ¶ 8. However, April 3, 2018 is well beyond ninety days after the incident, which occurred on February 9, 2017. Id. ¶ 15. A plaintiff must seek leave of the state supreme court or county court to file a late notice-of-claim, or else the claim is null. N.Y. Gen. Mun. Law § 50-e(7); Tyk v. Surat, 675 Fed. App'x 40, 42 (2d Cir. 2017). However, Plaintiff failed to seek permission to file his notice-of-claim late. Dkt. No. 16 ("Plaintiff's Opposition") at 11. Therefore, Plaintiff's state law claims are dismissed. N.Y. Gen. Mun. Law § 50-e(7); Tyk, 675 Fed. App'x at 42.

Plaintiff argues that his delay may be excused under Rule 6(b) of the Federal Rules of Civil Procedure, which says that the Court may extend the time for motion papers "after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); Pl.'s Opp'n at 11. However Rule 6(b) permits courts to extend time limits under the Federal Rules of Civil Procedure, not under state statute of limitations. To determine whether notice of a claim is timely, the Second Circuit looks to "the law of the relevant state, including state tolling rules." Wilchfort v. Knight, 307 F. Supp. 3d 64, 81 (E.D.N.Y. 2018) (citing Casey v. Merck & Co., 653 F.3d 95, 100 (2d Cir. 2011)). Therefore, Rule 6(b) of the Federal Rules of Civil Procedure can not excuse Plaintiff's late filing of notice. Id. Accordingly, Plaintiff's state law claims are dismissed.

**C. Section 1983 False Arrest and False Imprisonment Claims**

Except for the rule that only state actors may violate the Constitution and be sued under § 1983, the elements of false arrest and imprisonment are the same under the Fourth Amendment and New York law. Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991). A false arrest claim requires

6

that the plaintiff show (1) that the defendant intended to confine the plaintiff, (2) that the plaintiff was aware of the confinement, (3) the confinement was non-consensual, and (4) the confinement was not privileged. Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). A warrantless arrest for a misdemeanor is privileged "if the officer ha[d] probable cause to believe that the suspect committed a crime in the officer's presence." District of Columbia v. Wesby, 138 S.Ct. 577, 586 (2018) (holding that officers had probable cause to arrest plaintiffs for unlawfully entering a building when the officers saw plaintiffs in the building and inferred from the circumstances, including information from neighbors, that the plaintiffs did not have permission to be there). "Probable cause is established 'when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" Singer, 63 F.3d at 119 (quoting O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993)).

The officer may have probable cause even if he relies on information that turns out to be mistaken, so long as it was reasonable to rely on that information at the time. Bernard v. United States, 25 F.3d 98, 103 (2d Cir. 1994). Thus, an officer has probable cause to arrest an individual "if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth." Caldarola v. Calabrese, 298 F.3d 156, 163 (2d Cir. 2002) (quoting Miloslavsky v. AES Eng'g Soc'y, 808 F. Supp. 351, 355 (S.D.N.Y. 1992)). The informant's "basis of knowledge and veracity (i.e. how he knows and why we should believe him)" are instrumental in determining whether it is reasonable to rely on the informant. United States v. Elmore, 482 F.3d 172, 179 (2d Cir. 2007).

Plaintiff argues that he was not actually trespassing because he was leaving the building at the time of the arrest. Compl. ¶ 91. However, New York Penal Law § 140.10 defines criminal trespass in the third degree to include "knowingly enter[ing] or remain[ing] unlawfully" in a school "in violation of a personally communicated request to leave the premises from a principal, custodian . . . or other person in charge thereof." See also § 140.00(5) (defining "unlawfully in this context as ""without a legitimate reason"). Smith saw Plaintiff in the building and reasonably relied on Vice Principal Baxter's statement that Baxter—who was an eye-witness and not an anonymous informant—had told Plaintiff to leave but that Plaintiff had "refused" to do so. Compl. ¶ 16; see Arum v. Miller, 331 F. Supp. 2d 99, 110 (E.D.N.Y. 2004) (dismissing false arrest claim on summary judgment because school staff member "told police on the scene that he had asked [the] plaintiff to leave the premises," explaining that "[s]uch information, relayed by a person capable of revoking permission to be in the school, is sufficient to create probable cause for a police officer to arrest an individual for criminal trespass in the third degree"); cf. Florida v. J.L., 120 S.Ct. 1375, 1378 (2000) (holding that it is less reasonable to rely on information from an anonymous source than from a known informant).

Officer Lloyd was also named in the § 1983 false arrest and imprisonment claims. Compl. ¶ 29. An assisting officer has probable cause to make an arrest as long as the officer is acting "as a result of communication with a fellow officer or another police agency in possession of sufficient information to constitute probable cause for the arrest." People v. Ketcham, 712 N.E.2d 1238, 1241 (N.Y. 1999). Lloyd was called as backup to assist Smith. Compl. ¶ 28. Because Officer Smith had received sufficient information from Vice Principal Baxter to constitute probable cause to make the arrest, Officer Lloyd also had probable cause to assist in

8

the arrest since he got his information from Officer Smith. Compl. ¶ 28; see Ketcham, 712 N.E.2d at 1241.

Accordingly, Plaintiff's § 1983 false arrest and imprisonment claims are dismissed.

**D. Section 1983 Assault and Battery Claims**

In addition to the §1983 excessive force claim, Plaintiff alleges claims for assault and battery under §1983 against Officer Smith and Officer Lloyd. Compl. at 34. However, Plaintiff's assault and battery claims "[are] duplicative of his excessive force claim[s] and must be dismissed." Burdick v. N.Y. State Police, No. 14-CV-1254, 2015 WL 1954616, at *6 (N.D.N.Y. Apr. 28, 2015).

**E. Section 1983 Monell Claim**

*1. City of Syracuse*

Plaintiff claims that the City of Syracuse is liable for Officers Smith and Lloyd's use of excessive force on, assault and battery of, and false arrest of Plaintiff. Compl. ¶ 24–25. Because the Court has already dismissed both the state and federal false arrest and assault and battery claims, the only question is whether the City of Syracuse may be liable for the alleged excessive force. To hold a city liable under §1983, a plaintiff must prove that "there is an official policy or custom that caused the plaintiff to be subjected to a denial of a constitutional right." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). Any of the following may demonstrate a municipal policy or custom: (1) a formal policy that has been officially endorsed by the municipality, Monell, 436 U.S. at 694; (2) an action taken by an official who is responsible for establishing municipal policies with respect to the subject matter in question, Pembaur v. City of Cincinnati, 475 U.S. 469, 483–84 (1986); (3) a widespread practice that is so "permanent and well settled as

to constitute a 'custom or usage' with the force of law," City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); or (4) a failure to train, supervise, or discipline that "amounts to a deliberate indifference to the rights of persons with whom the police come into contact," City of Canton v. Harris, 489 U.S. 378, 388 (1989).

Plaintiff alleges that Syracuse Police Department's failure to train, discipline, and supervise its officers directly resulted in the use of excessive force against Plaintiff. Compl. ¶¶ 79–80. Defendants argue that Plaintiff did not plead sufficient facts for a Monell claim because of Grant v. City of Syracuse, No. 15-CV-445, 2018 WL 4778901 (N.D.N.Y. Oct. 3, 2018). Defs.' Mem. at 12–13. In Grant, after a trial, the jury found that there was not enough evidence to support a similar Monell claim against Syracuse. Id. Defendants argue that because the jury did not find for plaintiffs under a very similar set of facts, Plaintiff's Complaint fails to state a claim. Id. at 12–13. However, the fact that a jury in a separate, albeit similar, case did not find for other plaintiffs does not mean that Plaintiff cannot prevail in his case. Issue preclusion does not apply here because Plaintiff was not a party to Grant and presents allegations of liability for an incident (*i.e.*, Plaintiff's assault) that was not adjudicated in that case. See Bravo-Fernandez v. United States, 137 S.Ct. 352, 354 (2016) (holding that issue preclusion can bar the second contest of an issue if it has been "resolved by a prior judgment.").

Plaintiff's claim against Syracuse survives if all of Plaintiff's alleged facts, taken as a whole, plausibly suggest a pattern of similar constitutional violations by "untrained employees" that Syracuse policymakers recklessly failed to correct, leading to Plaintiff's unjustified assault. Connick v. Thompson, 563 U.S. 51, 62 (2011). Plaintiff alleges that the Syracuse Police Department has repeatedly refused to discipline or retrain officers who have been the subjects of

dozens of excessive force complaints. Compl. ¶¶ 82–84. In his Complaint, Plaintiff includes five specific instances of excessive force by the Syracuse police officers, including an instance where they "tased a disabled man multiple times for standing on a bus when he was unable to sit due to his disability." Compl. ¶ 86. These facts plausibly suggest a "pattern of similar constitutional violations by untrained employees" supporting a deliberately indifferent failure to train, supervise, and discipline Syracuse Police Officers that caused the violation of Plaintiff's constitutional rights. Compl. ¶¶ 79–86; see Batista, 702 F.2d at 397 (explaining that a "persistent failure to discipline subordinates who violate civil rights" can give rise to municipal liability under Monell). Therefore, Defendants' motion to dismiss the claim against Syracuse is denied.

*2. Chief Fowler*

a. Official Capacity

Plaintiff also asserts a Monell claim against Chief Fowler in both his individual and official capacities. Compl. ¶ 87. Monell claims against individuals in their official capacity should be dismissed as duplicative when the plaintiff also asserts a Monell claim against the individual's municipal employer. Grant v. City of Syracuse, No. 15-CV-445, 2017 WL 5564605, at *16 n.13 (N.D.N.Y. Nov. 17, 2017). Plaintiff has already asserted a Monell claim against Syracuse. Compl. at 24. Therefore, the Monell claim against Chief Fowler in his official capacity is dismissed.

b. Individual Capacity

Direct participation in the underlying constitutional violation is not always necessary to hold a defendant liable in his individual capacity. Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1066 (2d Cir. 1989). If a supervisory individual demonstrates deliberate indifference by

11

failing to act to prevent a constitutional violation, he may be liable. Id. In Colon v. Coughlin, the Second Circuit held that supervisory liability could be established five ways: by showing the supervisor's (1) direct participation in the constitutional violation; (2) failure to remedy the wrong after "being informed of the violation through a report or appeal;" (3) creation of "a policy or custom under which unconstitutional practices occurred, or allow[ing] the continuance of such a policy or custom;" (4) gross negligence in the supervision of individuals who violated the constitutional rights; or (5) "deliberate indifference to the rights of the [individual] by failing to act on information indicating that unconstitutional acts were occurring." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). The Supreme Court later held that supervisors' "knowledge and acquiescence" alone was not enough to hold supervisors liable for claims requiring discriminatory intent. Iqbal, 556 U.S. at 676–77, 682. However, Iqbal does not preclude claims based on supervisors' deliberate indifference where the underlying constitutional violation requires no more than deliberate indifference. Turkmen v. Hasty, 789 F.3d 218, 250 (2d Cir. 2015), rev'd on other grounds, Ziglar v. Abbasi, 137 S.Ct. 1843 (2017). Excessive force, the constitutional violation in question, can be proven based on deliberate indifference theories alone. See Outlaw v. City of Hartford, 884 F.3d 351, 373 (2d Cir. 2018).

Plaintiff alleges facts that, if true, plausibly suggest that Chief Fowler has failed to act on information indicating that unconstitutional acts were occurring within his police department. See Compl. ¶¶ 82–87. Of the thirty-five cases that were recommended for discipline by the Citizen's Review Board in 2012 and 2013, Chief Fowler only recalls disciplining one officer. Id. at ¶ 83–84. Out of the one hundred and seven cases filed with the Citizens Review Board against the Syracuse Police Department in 2014, twenty-one of which were recommended for discipline

by the Citizen's Review Board, Chief Fowler still only disciplined one officer. Id. at ¶ 82. These allegations plausibly suggest that Chief Fowler has ignored what has been an "exponential rise in excessive force claims" in recent years. Compl. ¶¶ 82–87. Such a failure to discipline so many past violations plausibly shows deliberate indifference to the rights of citizens, including Plaintiff, who interact with officers. See Cash v. Cty. of Erie, 654 F.3d 324, 344 (2d Cir. 2011) (holding that a failure to discipline prison guards who engaged in sexual contact with female inmates in previous instances constitutes a deliberate indifference to the constitutional rights of a plaintiff who was later sexually assaulted by a prison guard). Accordingly, Defendants' motion to dismiss the Monell claim against Chief Fowler in his individual capacity is denied.

**F. Defendants' Request to Bifurcate the Monell Claim**

Defendants request that the Monell claims against Syracuse and Chief Fowler be bifurcated into separate trials to avoid prejudice against Officers Smith and Lloyd in their individual capacities and to avoid jury confusion should there be a trial. Defs.' Mem. at 17–19. While Defendants raise some potentially valid concerns, it is too early in this litigation to decide whether any claims should be bifurcated. Bifurcation is premature when discovery is not yet complete because the development of the factual record may affect the issues that will be tried. Krueger v. N.Y. Telephone Co., 163 F.R.D. 446, 448 (S.D.N.Y. 1995). Defendants' motion to bifurcate the Monell claim is therefore denied.

**G. Compliance with Fed. R. Civ. P. 8, 10, 12(e), and 12(f)**

Defendants assert that Plaintiff's Complaint does not comply with Rules 8(a)(2), "8(e)(1)", or 10, of the Federal Rules of Civil Procedure, and they request that the Court dismiss the Complaint or strike portions of it under Rule 12(f), or require that Plaintiff replead certain

13

sections of it under Rule 12(e). Defs.' Mem. at 25. First, both Defendants' Rule 10 and Rule "8(e)(1)" defenses are insufficient because they do not explain how Plaintiff's Complaint fails to comply with Rule 10, and there is no Rule 8(e)(1) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8; 10. Therefore, Defendants' arguments based on those purported rules fail.

Defendants argue that Plaintiff should have to replead his claims because the Complaint mixes paragraphs of facts and legal conclusions, contains legal citations, and is otherwise confusing. Defs.' Mem. at 22–23, 25. Rule 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and "the pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). However, the standard to meet to grant a motion for a more definite statement under Rule 12(e) is demanding. Cole v. N.Y. State Dep't of Corr. Servs., No. 10-CV-1098, 2012 WL 4491825, at *22 (N.D.N.Y. Aug. 31, 2012). A motion for a more definite statement is "generally disfavored and should not be granted unless 'the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it.'" Cole, 2012 WL 4491825, at *22 (quoting Holmes v. Fischer, 764 F. Supp. 2d 523, 531 (W.D.N.Y. 2011)). While Plaintiff's Complaint contains conclusions of law, it is not so vague or ambiguous as to be unintelligible to the reader or prejudice the defendants in attempting to answer it. See Cole, 2012 WL 4491825, at *22. Therefore, Defendants' request for a more definite statement is denied.

Additionally, Defendants argue that portions of the Complaint should be struck pursuant to Rule 12(f) because it contains "scandalous" material. Defs.' Mem. at 23–25. They point to

14

Plaintiff's allegations that Officers Smith and Lloyd have committed "perjury" and joined in an "illegal conspiracy", which are possibly a criminal offenses. Id. at 24. Rule 12(f) provides that a court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). Indeed, allegations may be stricken where they have no bearing on the parties' claims or defenses, will likely be prejudicial, or where they have criminal overtones. Aventis Envtl. Sci. USA LP v. Scotts Co., No. 99-CV-4015, 2003 WL 1787295, at *2 (S.D.N.Y. Apr. 3, 2003). "However, 'the courts should not tamper with pleadings unless there is a strong reason for so doing.'" Id. (quoting Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir.1976)). And "it is settled that the motion [to strike] will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." Lipsky, 551 F.2d at 893; see also Ulla–Maija, Inc. v. Kivimaki, No. 2-CV-3640, 2003 WL 169777, at *4 (S.D.N.Y. Jan. 23, 2003) (observing that motions to strike are disfavored and will not be granted unless it is clear that the allegations can have no possible bearing on the subject matter of the litigation).

While unsupported allegations of criminal conduct irrelevant to a plaintiff's claims may be struck, the challenged statements are both supported by Plaintiff's factual allegations and are relevant to his claims. See Restis v. Am. Coal. Against Nuclear Iran, Inc., 53 F. Supp. 3d 705, 731 (S.D.N.Y. 2014). Whether Officers Smith and Lloyd truthfully recorded the events surrounding the use of force upon Plaintiff bears on whether Plaintiff's story is true, and whether the force the officers used was excessive. In addition, making false statements on an arrest report is still a Class A misdemeanor in New York. N.Y. Penal Law § 210.45. Therefore, the use of the terms "illegal conspiracy" and "perjury" does not justify relief under Rule 12(f).

Defendants also point to other colorful descriptions of the Officers' actions, which they assert is immaterial, scandalous, and a "persistent recitation of the same facts alleged in multiple paragraphs, which is impertinent to the Complaint." Defs.' Mem. at 25. Defendants argue that Plaintiff's descriptions of Officer Smith's actions, such as: "grab[bing] MINOR J.B. by the crotch;" "barbaric force;" and "like a professional T.V. wrestler," are scandalous and immaterial. Id. Yet, Defendants fail to demonstrate that Plaintiffs will be unable to adduce evidence to support these allegations. See Lipsky, 551 F.2d at 893. Therefore, the request to strike these statements is denied.

Lastly, Defendants move to strike some material that they claim is inadmissible character evidence. Defs.' Mem. at 24–25. However, evidence relevant to character may be admissible for other purposes, and it is too early at this stage of litigation to determine whether it will be. Lipsky, 551 F.2d at 893. Questions surrounding evidence should be addressed further down the line because they require "the context of an ongoing and unfolding trial in which to be properly decided." Id. Accordingly, Defendants' motion to strike under Rule 12(f) is denied.

## II. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to Dismiss is **GRANTED in part**. The Syracuse Police Department is **dismissed** from this case; Plaintiff's state law claims are **dismissed without prejudice** due to Plaintiff's failure to file a timely notice of claim; the Plaintiff's § 1983 false imprisonment and false arrest claims are **dismissed without prejudice** because the Complaint demonstrates that Officers Smith and Lloyd had probable cause to make the arrest;

and the Plaintiff's § 1983 assault and battery claims are **dismissed with prejudice** because they are duplicative of his excessive force claims; and it is further

**ORDERED**, Plaintiff may move to replead her state law claims and her § 1983 false imprisonment and false arrest claims within **ninety days** of the date of this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Motion to Dismiss is otherwise **DENIED**. The § 1983 excessive force claims against Officers Smith and Lloyd and the Monell claims against Chief Fowler and Syracuse survive; and it is further

**ORDERED**, that the Monell claims against Chief Fowler and Syracuse will not be bifurcated from the excessive force claims against Officers Smith and Lloyd at this stage of litigation; and it is further

**ORDERED**, that Defendants' requests for relief under Rules 12(e) and (f) are denied.

**IT IS SO ORDERED.**

DATED:	August 22, 2019
	Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge